NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
BRETT A. SAGEL (CBN: 243918)
Assistant United States Attorney
    Ronald Reagan Federal Building
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3598
    Facsimile: (714) 338-3708
    Email:  Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. SA CR 18-72(A)-JVS |
|---|---|
| Plaintiff, | GOVERNMENT'S OBJECTIONS AND RESPONSE TO PRE-SENTENCE REPORT AND GOVERNMENT'S POSITION RE: SENTENCING FOR DEFENDANT WYATT PASEK; EXHIBITS |
| v. | |
| WYATT PASEK, | |
| Defendant. | Hearing Date: August 26, 2019<br>Hearing Time: 9:00 a.m. |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Brett A. Sagel, hereby files its objections and response to the Pre-Sentence Report and its position regarding sentencing for defendant WYATT PASEK.

///

The Government's objections and response to the Pre-Sentence Report and its position regarding sentencing is based upon the attached memorandum of points and authorities, the files and records in this case, the attached exhibits, and such further evidence and argument as the Court may permit.

Dated: August 5, 2019               Respectfully submitted,

                                    NICOLA T. HANNA
                                    United States Attorney

                                    BRANDON D. FOX
                                    Assistant United States Attorney
                                    Chief, Criminal Division


                                         /s/
                                    BRETT A. SAGEL
                                    Assistant United States Attorney

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

On November 5, 2018, defendant WYATT PASEK ("defendant") pled guilty to counts one, two and three of the first superseding information in case number SA CR 18-72(A)-JVS, charging defendant with Conspiracy to Manufacture, Possess with Intent to Distribute, and Distribute Schedule II and IV Controlled Substances, in violation of 21 U.S.C. § 846 (count one); Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) (count two); and Laundering Monetary Instruments, in violation of 18 U.S.C. § 1957 (count three). The United States Probation Office ("USPO") disclosed its Presentence Report ("PSR") to the parties on May 5, 2019.  The USPO determined defendant's total offense level to be 40 and to have a criminal history category III, resulting in a range of imprisonment of 360-480 months.  The USPO recommends that defendant receive a sentence of 180 months' imprisonment, and a three year period of supervised release.

The Government has no objections to the factual statements in the PSR.  The Government objects to the calculation of criminal history category and the USPO's inclusion of a "mass-marketing" guideline increase.  The Government also disagrees with the USPO's downward variance based on purportedly mitigating factors.  For the reasons set forth below, and a separately filed motion by the Government, the Government believes that the appropriate total offense level and criminal history category be 35 and IV, resulting in an advisory sentencing guideline range of 235-293 months' imprisonment.  As a result, the Government recommends a term of imprisonment of 235 months and a three-year term of supervised release.

**II. FACTUAL BACKGROUND**

Defendant admitted to the following facts pursuant to the factual basis of his plea agreement:

Defendant was also known as "yung10x" on social media and used the moniker "oxygod" on online marketplaces.

Beginning at least as early as in or about April 2017 and continuing until on or about April 3, 2018, in Orange County, within the Central District of California, and elsewhere, defendant along with codefendants Duc Cao and Isaiah Suarez, and others, conspired and agreed with each other to knowingly and intentionally manufacture, possess with intent to distribute, and distribute: a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance; mixtures and substances containing detectable amounts of analogues of fentanyl, including, cyclopropyl fentanyl, methoxyacetyl fentanyl, and carfentanil, each Schedule II controlled substances; and a mixture and substance containing a detectable amount of alprazolam, also known as "Xanax," a Schedule IV controlled substance.

Defendant and codefendants Cao and Suarez used the fentanyl and analogues of fentanyl to manufacture counterfeit pills to appear as legitimate 30 mg pharmaceutical grade Oxycodone. Both real Oxycodone and the counterfeit pills defendant and codefendants manufactured and distributed contain the stamp "A215" on them and are round and blue in color. Defendant and codefendants Cao and Suarez used the alprazolam to manufacture counterfeit pills to appear as legitimate 2 mg pharmaceutical grade Xanax. Both real Xanax and the counterfeit pills defendant and codefendants manufactured and distributed contain the stamp "GG249" on them and are oblong and white in color.

Defendant and codefendant Cao ordered chemicals and equipment on the internet from China and elsewhere for the manufacturing and distribution of the counterfeit Oxycodone pills, which included: the fentanyl and fentanyl analogues; a pill press; pill press molds; and mylar and zip-lock bags.  Defendant and codefendant Cao discussed how to manufacture the pills and the dosage to use to make the pills. Starting in approximately October 2017 and continuing to approximately April 3, 2018, defendant paid for an apartment in Newport Beach for the purpose of manufacturing counterfeit 30 mg pharmaceutical grade Oxycodone pills and counterfeit 2 mg pharmaceutical grade Xanax pills, as well as for codefendant Suarez to live at the apartment.  Defendant and codefendants Cao and Suarez used the apartment in Newport Beach as a clandestine laboratory to manufacture the drugs and stored and maintained the drugs there for distribution to others.  Defendant and his codefendants kept the pill presses, small scales, drugs, dyes, binding agents, and bags, among other items to manufacture and distribute the drugs, at codefendant Suarez's apartment, and codefendants Cao and Suarez pressed the pills at the apartment to be distributed.

Defendant and codefendant Cao operated a marketplace on the darkweb to sell and distribute the drugs that defendant and his codefendants manufactured.  In addition to the drugs that defendant and codefendant Cao sold over the darkweb, defendant and codefendants Cao and Suarez also manufactured pills that defendant sold locally. Defendant and codefendant Cao sold the drugs on defendant's online vendor marketplace, using the moniker "oxygod," and defendant and codefendant Cao determined what orders to fulfill, how many pills defendant and others needed to press to fulfill the orders, and where

to send the orders.  Defendant and codefendant Cao purchased postage online and distributed the drugs using the United States Postal Service ("USPS").  Defendant and codefendant Cao created postal labels for the USPS parcels using fictitious names and random addresses for the return address, placed the drugs in mylar bags within the parcels to prevent law enforcement from seeing inside the parcels, and placed the parcels containing drugs in various USPS receptacles throughout Orange County.

On or about January 5, 2018, and January 24, 2018, defendant and codefendant Cao, using defendant's "oxygod" darkweb marketplace, sold 100 pills (on each date) purported to be "pressed oxy" containing .8mg of fentanyl in exchange for approximately $530 (on each date) in Bitcoin to a federal agent posing in an undercover capacity.

On March 5, 2018, codefendant Cao placed into a USPS receptacle in Newport Beach, California, seven USPS priority mail parcels, which contained approximately 1,400 round, blue pills stamped with "A215" that contained fentanyl.  After defendant learned these parcels were not delivered to the intended recipients, defendant told codefendant Cao not to ship the drugs from Newport Beach anymore.  On April 2, 2018, codefendant Cao placed into an USPS receptacle in Santa Ana, California, thirteen USPS priority mail parcels, which contained approximately 4,000 round, blue pills stamped with "A215" that contained fentanyl.  The twenty parcels placed in USPS receptacles on March 5, 2018 and April 2, 2018 contained the illegal drugs defendant intended to distribute to fulfill orders defendant received on his "oxygod" darkweb marketplace.  On April 3, 2018, defendant and codefendants Cao and Suarez possessed with the intent to distribute, approximately 99,536 round, blue pills stamped with "A215," as well

as possessed with the intent to distribute approximately 864 oblong, white pills stamped with "GG249," along with large bags containing blue and white powders, scales, and a pill press.

The drugs that law enforcement seized from defendant and codefendants Cao and Suarez, have been properly tested by the United States Postal Service's Forensic Laboratory Services, which include the following amount of drugs and the type of drugs:

| Fentanyl | 2076 grams |
|---|---|
| Cyclopropyl Fentanyl | 3815 grams |
| Methoxyacetyl Fentanyl | 2032 grams |
| Carfentanil | 64 grams |
| Alprazolam | 247 grams |

On or about March 28, 2018, in Orange County, within the Central District of California, defendant knowingly possessed a firearm, namely, a Glock Model 34, 9mm handgun, bearing serial number YSF052, in and affecting interstate and foreign commerce.  Such possession occurred after defendant had been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year: (1) Possession and Purchase for Sale of a Controlled Substance, in violation of California Health and Safety Code Section 11351, in the Superior Court for the State of California, County of Orange, case number 14HF2107, on or about August 1, 2014; (2) Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11378, in the Superior Court for the State of California, County of Orange, case number 14HF2107, on or about August 1, 2014.

On or about May 24, 2017, in Orange County, within the Central District of California, defendant purchased an Audemars Piguet Royal Oak Offshore Watch from Newport Jewelers for a total purchase price of $26,800, which defendant PASEK paid in cash.  Defendant knew that the cash funds he used to purchase the Audemars Piguet Watch represented the proceeds of his conspiracy to distribute controlled substances described above and the monetary transaction to purchase the Audemars Piguet Watch affected interstate and foreign commerce.

From on or about October 3, 2017 through on or about February 5, 2018, defendant purchased approximately $150,583 in gold from JM Bullion, Inc., using bitcoin.  In addition, from on or about April 24, 2017 through on or about November 9, 2017, defendant met an individual approximately 32 times for defendant to exchange approximately $407,600 in bitcoin for cash.  The bitcoin defendant used to purchase the gold as well as the bitcoin defendant exchanged for cash were the proceeds of defendant's illegal drug distribution conspiracy.

The United States currency, property and assets seized by law enforcement officials on or about April 3, 2018, including: the approximately $1,720 in United States currency seized from defendant; the approximately $12,553 in United States currency seized from defendant's residence; the approximately $7,130 in United States currency seized from defendant's mother's residence; the Audemars Piguet black watch seized from defendant; the Silver Audemars Piguet Royal Oak Offshore Watch with diamonds seized from defendant's residence; the gold and diamond Bitcoin necklace seized from defendant's residence; the two gold bars seized from defendant's mother's residence, as well as the cryptocurrency/bitcoin defendant

6

possessed in his Blockchain wallet, were proceeds of defendant's illegal drug distribution conspiracy.

**III. SENTENCING RECOMMENDATION**

    **A.    The Government's Guideline Calculation**

The Government submits that the following guideline calculation applies in the sentencing of defendant:

| | | |
|---|---|---|
| Base Offense Level: | 36 | U.S.S.G. § 2D1.1(a)(5) |
| Maintained Premises for purpose of manufacturing a controlled substance: | +2 | U.S.S.G. § 2D1.1(b)(12) |
| Aggravating Role: | +2 | U.S.S.G. § 3B1.1(c) |
| Money Laundering Conviction: | +1 | U.S.S.G. § 2S1.1(b)(2)(A) |
| Downward Departure | -3[1] | |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1 |
| Total Offense Level: | 35 | |

The Government does not believe the facts before this Court, specifically defendant's admitted to factual basis, are sufficient to support the two-level upward adjustment for "mass-marketing," pursuant to U.S.S.G. § 2D1.1(b)(7) as the USPO recommended.[2]

The PSR has defendant at a criminal history category of III, however, the Government believes defendant should be a criminal history category IV. Specifically, on August 27, 2014, defendant was sentenced to thirty-six months' probation to include 90 days jail,

---

[1] The Government believes a three-level departure is appropriate based on the separately filed motion of the Government.

[2] The USPO sought the same two-level enhancement in both co-defendant Duc Cao's and co-defendant Isaiah Suarez's sentencings, but this Court did not impose the enhancement.

7

which defendant violated and received an additional 90 days jail and his probation reinstated. (PSR ¶75.) Defendant's probation, therefore, continued until August 2017, and defendant admitted in his factual basis that he knowingly engaged in his criminal conspiracy starting at least as early as April 2017. As a result, this Court should add an additional two points to defendant's criminal history score because defendant committed the instant offense while under a criminal justice sentence. USSG § 4A1.1(d). With a criminal history score of seven, defendant would be in criminal history category IV. USSG Chapter 5, Part A.

A total offense level of thirty-five and a criminal history category IV, yields an advisory sentencing range of 235-293 months' imprisonment.

### B. The Government's Recommended Sentence

The law provides that sentencing courts must start with the sentence advised by the Sentencing Guidelines. United States v. Booker, 543 U.S. 220, 264 (2005) ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."); United States v. Cantrell, 433 F.3d 1269, 1279 (9th Cir. 2006) (stressing that "district courts still must consult the Guidelines and take them into account when sentencing, even though they now have the discretion to impose non-Guidelines sentences"). Pursuant to 18 U.S.C. § 3553(a), the court should "impose a sentence sufficient, but not greater than necessary," to comply with the enumerated purposes of sentencing, including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed--

8

>>(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(1), (2).

Although the USPO believed defendant's advisory sentencing range was 360-480 months' imprisonment, the USPO basically recommended a fifteen-year downward variance based on "mitigating circumstances." The Government, however, believes the mitigating factors pale in comparison to the aggravating factors and Section 3553 hardly provides a basis for such a variance, or a variance at all.

> 1. Nature and Circumstances of the Offense

The dangerous nature of defendant's counterfeit opioid conspiracy cannot be overstated and warrants a lengthy, within-guidelines, sentence. Defendant caused highly toxic drugs to be mixed into counterfeit pharmaceuticals at a clandestine laboratory in a highly populated residential and commercial area, the Newport Beach Peninsula, and sold the drugs in massive quantities for approximately one year. Defendant was intimately involved in each stage of the conspiracy, either directly or managing the activities of his co-defendants to carry out the goals of the conspiracy.

As detailed in the affidavits supporting search and arrest warrants in this case, agents intercepted seven packages on March 5, 2018, and thirteen packages on April 2, 2018, containing the illegal drugs that defendant was distributing as part of his criminal conspiracy. Had federal agents not intercepted these packages, they would have resulted in substantial counterfeit opioids containing

fentanyl and fentanyl analogues to be distributed to New York, California, Massachusetts, Illinois, Texas, Florida, Nevada, Georgia, Utah, Virginia, Tennessee, North Carolina, Colorado, Alabama, and Nebraska. Defendant's conduct cannot be viewed in isolation, simply put, defendant's criminal conduct helped fuel the opioid crisis throughout the country.

2. History and Characteristics of Defendant

The current conviction will be defendant's fourth drug-related conviction by the age of twenty-two, including two prior drug sales convictions, and committing the instant offense while on court supervision. Defendant's criminal history not only shows a pattern of recidivism, but also demonstrates a dramatic escalation of his criminal conduct. The USPO stated it "believes Pasek's youthful age at the time of the instant offense, coupled with his mental and emotional issues, and drug abuse are mitigating factors not fully captured by the guidelines, which are believed to have led to Pasek's participation in the offense." The USPO's "belief" of what may have led to defendant's conduct is belied by the facts and circumstances in this case.

Defendant frequently posted images and videos of himself on Instagram and/or Youtube under his Yung10x moniker with, among other depictions, luxury vehicles, massive amounts of cash, expensive jewelry, firearms, and/or women. See Sentencing Exhibits 1-8 (consisting of eight photographs), 9-14 (consisting of six videos).[3]

---

[3] The Government has attached the eight photographs in Sentencing Exhibits 1-8, and has filed separately a CD containing the six videos in Sentencing Exhibits 9-14. The Government edited/blurred the faces of the other individuals in Sentencing Exhibit 8. These fourteen images and videos are only a small sampling of the hundreds of images and videos defendant posted

Defendant "promoted" the fact of his lifestyle was due to his "working." See Sentencing Exhibit 9 (While spreading $100 bills over the hood of a Rolls Royce, defendant states, among other things, "Yung10x, you know I'm fucking working."). In addition to buying expensive jewelry and gold bars, and leasing luxurious vehicles, defendant also rented the penthouse apartment on the twenty-fifth floor of a twenty-five floor luxury apartment building for approximately $5750 per month. Defendant organized, supervised, and participated in the drug conspiracy to make a lot of money and live an obscene lifestyle -- all from the proceeds of criminal activity. Defendant's engagement in his criminal activity was a knowing choice motivated by greed and a lack of respect for both human life and the law.

3. Deterrence, Promoting Respect for the Law, Protecting the Public from Defendant, and Punishing Defendant.

Deterrence, both general and specific, is a particularly important factor here given the opioid crisis that exists because of conduct like defendant's and defendant's continual, and escalating, criminal conduct. A lengthy sentence is necessary to deter others from engaging in similar conduct as defendant as well as to deter defendant from committing any further offenses. A within guidelines sentence is also necessary to punish defendant for his crimes and protect the public from defendant.

**IV. CONCLUSION**

The Government recommends this Court sentence defendant to: 235 months' imprisonment; pay a special assessment of $300; and serve

---

promoting his wealth and success.

1  three years of supervised release under the conditions set forth by
2  the USPO.  The Government believes this sentence is reasonable and
3  appropriate, and is sufficient, but not greater than necessary, to
4  achieve the goals of 18 U.S.C. § 3553(a).